IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 12-cv-01580-REB-BNB

KEVIN RAYNELL WILLIAMS,

Plaintiff,

v.

CAPTAIN KLIEN, Individually and in his official capacity as captain,
C.O. J. SANDER, Individually and in his official capacity as correctional officer,
C.O. DOCKINS, Individually and in his official capacity as correctional officer,
C.O. ROYAL, Individually and in his official capacity as correctional officer,
C.O. PRICE, Individually and in his official capacity as correctional officer, and
C.O. KOCH, Individually and in his official capacity as correctional officer,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter arises on **Defendants' Motion to Dismiss** [Doc. #42, filed 05/10/2013] (the "Motion") filed by defendants Klien, Sander, Dockins, Price, and Koch.[1]  I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

---

[1]On March 25, 2013, I recommended that the claims against defendant Royal be dismissed without prejudice for failure to prosecute.

The standard of review for a motion to dismiss for lack of subject matter jurisdiction

under Fed. R. Civ. P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject
> matter jurisdiction take two forms. First, a facial attack on the
> complaint's allegations as to subject matter jurisdiction questions
> the sufficiency of the complaint.  In reviewing a facial attack on
> the complaint, a district court must accept the allegations in the
> complaint as true.
>
> Second, a party may go beyond allegations contained in the
> complaint and challenge the facts upon which subject matter
> jurisdiction depends.  When reviewing a factual attack on subject
> matter jurisdiction, a district court may not presume the
> truthfulness of the complaint's factual allegations.  A court has
> wide discretion to allow affidavits, other documents, and a limited
> evidentiary hearing to resolve disputed jurisdictional facts under
> Rule 12(b)(1). In such instances, a court's reference to evidence
> outside the pleadings does not convert the motion to a Rule 56
> motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to
> dismiss into a Rule 12(b)(6) motion or a Rule 56 summary
> judgment motion when resolution of the jurisdictional question is
> intertwined with the merits of the case.  The jurisdictional question
> is intertwined with the merits of the case if subject matter
> jurisdiction is dependent on the same statute which provides the
> substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept the

plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of

the plaintiff.  City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986);

Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  The complaint must contain specific

allegations sufficient to establish that it plausibly supports a claim for relief.  Alvarado v. KOB-

TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "The issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer,

468 U.S. 183 (1984).

## II.  BACKGROUND

The plaintiff is incarcerated by the Federal Bureau of Prisons ("BOP") at the Federal

Correctional Institution in Florence, Colorado ("FCI Florence").  He filed his Amended Prisoner

Complaint on October 31, 2012 [Doc. #21] (the "Complaint").  The Complaint contains the

following allegations:

1.   The plaintiff arrived at FCI Florence in October 2010.  Shortly after he arrived, prison

officials began waking him up at least three times a night during "count" by beating on his cell

door and yelling into the cell.  The plaintiff complained to two lieutenants and was told by both

that "this was the policy of the program statement 5500.12 that the Officers must see flesh or the

inmate move."  The plaintiff began to sleep so the officers could always see his flesh.  The

problem did not cease.  *Complaint*, p. 4.[2]

2.   The plaintiff wrote a letter to Internal Affairs describing the problem.  Id. at pp. 4-5.

He was called into Lieutenant Young's office and questioned about the problem.  Lieutenant

Young told the plaintiff that he needed to know the names of the officers hitting his door.

Immediately after talking to Lieutenant Young, the banging became worse, and the plaintiff "was

not allowed to sleep for weeks on end."  Id. at pp. 5, 17.

---

[2]Citation is to the page numbers of the Complaint as they are assigned by the court's
docketing system.

3.   The plaintiff works at UNICOR and should be allowed uninterrupted sleep.  <u>Id.</u> at p. 5.

4.   In late March, defendant Correctional Officer Dockins awakened the plaintiff because there was a water cup in his window.  The plaintiff was informed by a lieutenant the next night that the water cup was not a security risk.  <u>Id.</u>  Dockins engaged "in a method of torture known as sleep deprivation" from March 2011 through May 2011.  She awakened the plaintiff "every night up to three times a night for weeks on end."  <u>Id.</u> at p. 4.

5.   On April 25, 2011, Dockins woke the plaintiff during the 3:00 a.m. count.  The plaintiff asked for her name.  She told him that he would regret it if he wrote her up.  The plaintiff felt that Dockins was threatening to retaliate.  <u>Id.</u> at pp. 5, 13.

6.   The following night, defendants Dockins and Sander came to the plaintiff's cell door. Sander shined his flashlight on the plaintiff, then on the plaintiff's cell mate, then back on the plaintiff.  Sander turned away, then beat on the plaintiff's cell door with his flashlight as hard as he could.  The plaintiff asked Sander for his name.  Sander told him his name and informed the plaintiff that "what [he] was doing is not going to work."  The plaintiff began filing requests for administrative remedies.  <u>Id.</u> at p. 5.

7.   On May 13, 2011, someone banged on the plaintiff's door during the midnight count and again at 3:00 a.m.  The plaintiff asked for the officers' names.  He was told that the officers names were Royal and Marshall.  The plaintiff filed a request for administrative remedy.  Neither this request nor was the request for administrative remedy filed against Dockins was answered. The request for administrative remedy filed against Sander made it to Washington, D.C., but has never been answered at that level  <u>Id.</u> at pp. 5, 19.

8.   On May 16, 2011, the plaintiff was called to a lieutenant's office where he met with Captain Klien.  Klien "began with racial epithets and in a tone of voice that was threatening and intimidating."  Klien said that he would take the plaintiff's job if the plaintiff did not stop filing grievances.  Klien asked the plaintiff how many grievances he had filed "and said I bet your kind can't even count that high."  The plaintiff believed his life might be in jeopardy or "at least [his] well being."  At the end of the meeting, Klien told the plaintiff to "get the Fuck out of his office."  The plaintiff "wrote all of this up and sent it to Washington DC on a sensitive 11" but never received a response.  Id. pp. 5, 19-20.

9.   On October 23, 2011, defendant Royal began beating on the plaintiff's door and continued for three weeks.  He informed the plaintiff that he was not going to stop beating on the door.  The plaintiff submitted to the Regional Office a request for administrative remedy against Royal.  He was told to redo his remedy at the institutional level.  Id. at pp. 5-6, 20.

10.   The plaintiff believes that someone was tampering with his mail.  He either received his mail weeks late or it was destroyed.  Id. at pp. 6, 20.

11.   From December 23, 2011, to March 30, 2012, the plaintiff's "door was beat on every night that [defendant] Officer Koch worked which is 5 days a week."  Id. at p. 6.  The plaintiff has seen Koch beating on his door.  He asked Koch for his name after seeing him in the chow hall.  Koch then attempted to get him in trouble with the lieutenant in charge of the chow hall.  Id. at p. 20.

12.   Defendant Officer Price began systematically searching the plaintiff's cell and stealing his property.  Price would stop the plaintiff on the sidewalks and berate and threaten him.  On several occasions, the plaintiff believed Price would become violent towards him, and

5

he began to fear for his safety.  On numerous occasions, Price destroyed the plaintiff's cell and his personal property, including family pictures and property purchased from the commissary.  Id. at p. 6.  The plaintiff has filed requests for administrative remedies on Price.  He has been told by a counselor that "no matter what CO Price does she is going to back him up."  Id. at p. 20.

13.   The plaintiff has spoken with the Warden and has filed grievances.  Nothing has helped.  He "was becoming a wreck from lack of sleep and living in fear."  Id. at p. 6.  The sleep deprivation "extracted an extreme toll on [his] mental health."  Id. at p. 7.

The plaintiff asserts seven claims for relief.  Claim Seven was dismissed for failure to state a claim upon which relief can be granted [Doc. #23].  In addition, Claim Two is asserted against defendant Royal.  I do not address the claim against Royal because I have recommended that he be dismissed without prejudice for failure to prosecute [Doc. #39],.

In Claim One the plaintiff states that defendant Dockins violated his Eighth Amendment right to be free from cruel and unusual punishment when he caused the plaintiff to suffer sleep deprivation and threatened him.  Id. at p. 7.

Claim Three is asserted against defendant Sander for depriving the plaintiff of sleep from March 2011 through May 2011 and threatening him in violation of the Eighth Amendment.  Id. at  p. 9.

In Claim Four the plaintiff states that defendant Koch violated his Eighth Amendment rights when he threatened the plaintiff and awakened him three times a night, five times a week, from December 23, 2011, through March 30, 2012.  Id. at p. 10.

The plaintiff asserts Claim Five against defendant Price for "engaging in personal attack on my person and property by continueing [sic] to seek me out for confrontation and destroying and theft of my personal property" in retaliation for filing grievances.  In addition, the plaintiff claims that Price physically assaulted him in violation of his Eighth Amendment rights.  Id. at p. 11.

Claim Six alleges that defendant Klien violated the plaintiff's Eighth Amendment and due process rights when he used racial epithets and threats of physical violence to keep the plaintiff from filing grievances; placed the plaintiff into the Special Housing Unit to keep him from filing grievances; encouraged his officers to use sleep deprivation from March 2011 to March 2012; and threatened the plaintiff's personal safety and his job.[3]

The plaintiff seeks compensatory damages of $25,000.00.  He also seeks injunctive relief in the form of an order directing the defendants to "cease there [sic] actions in the manor of sleep deprivation, threats, intimidation and assualt [sic] on my person and property."  Id. at p. 15.

### III.  ANALYSIS

### A.  Sovereign Immunity

The defendants assert that the claims against them in their official capacities must be dismissed.  *Motion*, p. 5.  The defendants present a facial challenge to the allegations in the Complaint.  Therefore, I accept those allegations as true.  Holt, 46 F.3d at 1003.

---

[3]Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

It is a well-established principle that "[a]s a sovereign, the United States 'is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit.'" Lee v. United States, 980 F.2d 1337, 1340 (10th Cir. 1992) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)).  Sovereign immunity is a jurisdictional bar to suit.  Federal Deposit Insurance Corp. v. Meyer, 510 U.S. 471, 475 (1994).

Bivens creates a cause of action for money damages against federal officials only in their individual capacities; it does not create a cause of action against the United States.  Simmat v. United States Bureau of Prisons, 413 F.3d 1225, 1231 (10th Cir. 2005); Farmer v. Perrill, 275 F.3d 958, 963 (10th Cir. 2001).  The Motion should be granted to the extent it seeks dismissal of the claims against the defendants in their official capacities for money damages.

The Tenth Circuit Court of Appeals has stated that the Administrative Procedure Act, 5 U.S.C. § 702, waives sovereign immunity in most suits for nonmonetary relief.  Simmat, 413 F.3d at 1233.  Section 702 provides:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

 "This waiver is not limited to suits under the Administrative Procedure Act." Simmat, 413 F.3d at 1233.  However, as discussed below, the plaintiff's request for injunctive relief is moot.  Therefore, the Motion should also be granted insofar as it seeks dismissal of the claims against the defendants in their official capacities for injunctive relief.

### B.   Qualified Immunity

The defendants assert that they are entitled to qualified immunity.  *Motion*, p. 12.

Qualified immunity shields government officials sued in their individual capacities from liability

for civil damages provided that their conduct when committed did not violate "clearly

established statutory or constitutional rights of which a reasonable person would have known."

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order for a right to be "clearly established"

for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that

right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I  consider two factors.  I must

determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional

right.  In addition, I must inquire whether the right was clearly established at the time of the

violation.  Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas,

172 F.3d 736, 745 (10th Cir. 1999).[4]

### 1.   Verbal Harassment

The defendants assert that the plaintiff's allegations of verbal threats and harassment

must be dismissed because verbal abuse does not rise to the level of a constitutional violation.

*Motion*, pp. 5-6.

To state a constitutional claim, an individual must allege misconduct that is "so egregious

as to subject the aggrieved individual to a deprivation of constitutional dimensions."  Wise v.

---

[4]The order in which I may consider these factors is discretionary.  Pearson v. Callahan,
555 U.S.223, 236 (2009).  However, both prongs must be satisfied.  Herrera v. City of
Albuquerque, 589 F.3d 1064, 1070 (10th Cir. 2009).

Bravo, 666 F.2d 1328, 1333 (10th Cir. 1981).  Verbal abuse, taunting, or harassment--even if

extreme--is generally insufficient to establish a constitutional violation.  McBride v. Deer, 240

F.3d 1287, 1291 n.3 (10th Cir. 2001) (stating that a prison official's threat to spray the plaintiff

with mace does not violate the Eighth Amendment); Abeyta v. Chama Valley Independent

School District, 77 F.3d 1253 (10th Cir. 1996) (holding that a school teacher calling a twelve year

old female student a prostitute over a 1½ month period and permitting her classmates' resulting

taunting for weeks does not violate substantive due process); Escobar v. Parker, 982 F.2d 528,

1992 WL 372400 (10th Cir. 1992) (holding that, after an altercation, a guard telling a third inmate

that the plaintiff should have been stabbed and announcing that the plaintiff was dangerous and

could not be trusted did not violate the plaintiff's Eighth Amendment or the due process rights);

Walker v. Young, 958 F.2d 381, 1992 WL 49785 (10th Cir. 1992) (holding that a correctional

officer's threat to "get even" after the prisoner filed a grievance and labeling the prisoner a

snitch did not state a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir.

1979) (holding that a prisoner's claim that the sheriff laughed at him and threatened to hang him

does not state a constitutional deprivation under § 1983).

        The plaintiff's allegations of threats by the defendants are insufficient to state

independent Eighth Amendment claims, although they may be used to support his retaliation

claims.  The Motion should be granted insofar as it seeks dismissal of the plaintiff's Eighth

Amendment claims based on threats by the defendants.

### 2.   Retaliation

The defendants assert that the plaintiff fails to state a claim for retaliation.  *Motion*, pp. 6-9.

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights."  Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotations and citation omitted).  The First Amendment protects the right to free speech and to petition the government for redress of grievances.  U.S. Const. Amend. I.  The filing of an administrative grievance is protected by the First Amendment.  Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991).  "This principle applies even if the action taken in retaliation would be otherwise permissible."  Id. at 948.

"Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."  Poole v. County of Otero, 271 F.3d 955, 960 (10th Cir. 2001) *abrogated on other grounds by* Hartman v. Moore, 547 U.S. 250 (2006).  An inmate, however, is not "inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity."  Peterson, 149 F.3d at 1144.  Therefore, to prevail on a claim of retaliation a plaintiff "must prove that but for the retaliatory motive, the incidents to which he refers . . . would not have taken place."  Id. (quotations and citation omitted).  "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights."  Id. (quotations and citation omitted) (emphasis in original).

Claims Five and Six allege retaliation.  Claim Five is asserted against defendant Price for "engaging in personal attack on my person and property by continueing [sic] to seek me out for confrontation and destroying and theft of my personal property" in retaliation for filing grievances.  *Complaint*, p. 11.  The plaintiff alleges that these actions began after he filed grievances against other officers and after he met with defendant Klien.  Id.  The plaintiff does not allege specific facts to show that Price knew of the grievances or of the plaintiff's meeting with Klien.  The Motion should be granted insofar as it seeks dismissal of the retaliation claim against defendant Price.

In Claim Six, the plaintiff alleges that he was called into a meeting on May 16, 2011. Defendant Klien was at the meeting.  Klien asked the plaintiff "do you even know how many remedies you have written?"  Klien told him that if he did not stop filing grievances, he would "take" the plaintiff's job.  Id. at pp. 5, 19.  The plaintiff further alleges that in May 2011, defendant Klien used racial epithets and threats of physical violence to keep the plaintiff from filing grievances, and Klien placed the plaintiff in the Special Housing Unit to keep him from filing grievances.[5]  Id. at p. 12.  These allegations are sufficient to allege that Klien retaliated against the plaintiff for filing grievances.  Moreover, the plaintiff's right to be free from retaliation for filing grievances was clearly established at the time of the Klien's alleged actions. Williams, 926 F.2d at 998.  Therefore, Klien is not entitled to qualified immunity on this claim.

The Motion should be denied insofar as it seeks dismissal of the retaliation claim against defendant Klien.

---

[5]The plaintiff also alleges that Klien violated his due process rights.  The defendants do not seek dismissal of the due process claim.

12

**3. Sleep Deprivation**

The defendants argue that the plaintiff has failed to state an Eighth Amendment claim based on sleep deprivation. *Motion*, pp. 9-12. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care and take "reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted).

A prisoner claiming an Eighth Amendment violation must establish that particular conditions of confinement constitute cruel and unusual punishment both objectively and subjectively . Wilson v. Seiter, 501 U.S. 294, 297-298 (1991). To satisfy the objective component, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. To satisfy the subjective component, a plaintiff must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. Farmer, 511 U.S. at 834. The subjective component of a deliberate indifference claim is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

In order to satisfy the objective component, the plaintiff must allege that he suffered an injury sufficiently serious to invoke the Eighth Amendment. Murray v. Edwards County

Sheriff's Dept., 248 Fed.Appx. 993, 998 (10th Cir. 2007) (finding that inmate failed to establish that alleged sleep deprivation caused sufficiently serious harm to sustain Eighth Amendment claim).   The plaintiff does not allege any specific facts which show that the disturbances in his sleep "resulted in his suffering any serious physical or psychological injury or in the total deprivation of a basic necessity of life."   Nikirk v. Rodriguez, 129 Fed.Appx. 103, 104 (5th Cir. 2005) (upholding district court's dismissal of inmate's Eighth Amendment claim based on interruption of sleep caused by head-counts during the night because inmate failed to allege serious physical or psychological damage).   He provides only conclusory allegations that he "was becoming a wreck from lack of sleep and living in fear," *Complaint*, p. 6, and that the sleep deprivation "extracted an extreme toll on [his] mental health."[6]   Id. at p. 7.

The Motion should be granted insofar as it seeks dismissal of the plaintiff's Eighth Amendment claims based on sleep deprivation.

### 4.  Physical Assault by Price

Although the defendants do not discuss the allegation that Price physically assaulted the plaintiff in violation of his Eighth Amendment rights, the Complaint alleges only that Price "has physically assaulted [sic] my person."   *Complaint*, p. 11.

---

[6]The plaintiff attached numerous copies of grievances to his Complaint.  Written documents attached to the complaint are exhibits and are considered part of the complaint for consideration in a Rule 12(b)(6) dismissal.  Hall v. Bellmon, 935 F.2d 1106, 1112 (10th Cir. 1991).  The grievances do not contain any specific factual allegations of serious physical or psychological damage as a result of sleep deprivation.  Two of the grievances contain conclusory allegations of damage.  One states that "[t]he continued harassment has given me a sleep disorder, and I am unable to get a full nights sleep."  *Central Office Administrative Remedy Appeal* [Doc. #21, p. 44].  The other states "I am continually losing sleep & in several ways it seems my health is beginning to suffer in aspect due to the enormous amount of stress & duress I'm under."  Id. at pp. 55-56.

14

A complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief.  <u>Alvarado v. KOB-TV, L.L.C.</u>, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief."  <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations and citation omitted).  This is especially true in cases, like this one, where the defense of qualified immunity has been asserted.  <u>Id.</u> at 1248-49.

The plaintiff's allegation regarding Price's physical assault is insufficient to state a claim upon which relief can be granted.

### C.  Injunctive Relief

The plaintiff requests injunctive relief in the form of an order directing the defendants to "cease there [sic] actions in the manor of sleep deprivation, threats, intimidation and assualt [sic] on my person and property."  *Complaint*, p. 15.  Because I recommend dismissal of the claims related to sleep deprivation, threats, and the alleged assault by Price, the plaintiff's request for injunctive relief is moot.

### IV.  CONCLUSION

I respectfully RECOMMEND:

(1)  Defendants' Motion to Dismiss [Doc. #42] be DENIED insofar as it seeks dismissal of the due process and retaliation claims against defendant Klien and GRANTED in all other respects; and

(2)   The plaintiff's allegation regarding Price's physical assault be DISMISSED for

failure to state a claim upon which relief can be granted.[7]

Dated November 7, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

---

[7]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).